Robert A. Nicholas
Evan K. Farber
Anne E. Rollins
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
*Attorneys for Plaintiffs PNC Bank*
*National Association, Cathay Bank,*
*and Bank Leumi, USA*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, WELLS FARGO CAPITAL FINANCE, LLC, WELLS FARGO BANK, NATIONAL ASSOCIATION, BMO HARRIS BANK, HUNTINGTON NATIONAL BANK, CATHAY BANK, and BANK LEUMI, USA, <br><br> Plaintiffs, <br><br> v. <br><br> DANA TRANSPORT, INC. and RONALD B. DANA, <br><br> Defendants | Case No. _____ <br><br> **COMPLAINT** |

Plaintiffs PNC Bank, National Association ("PNC"), Wells Fargo Capital Finance, LLC, Wells Fargo Bank, National Association (together with Wells Fargo Capital Finance, LLC, "Wells Fargo"), BMO Harris Bank ("BMO"), Huntington National Bank ("Huntington"), Cathay Bank ("Cathay"), and Bank Leumi, USA ("Leumi," and together with PNC, Wells Fargo, BMO, Huntington, and Cathay, "Plaintiffs" or "Lenders"), by and through their counsel, bring this action against Defendants Dana Transport, Inc. ("Dana Transport") and Ronald B. Dana

(together with Dana Transport, "Defendants," and together with Dana Transport and its affiliates, "Dana"), and allege as follows:

## NATURE OF THE ACTION

1. This is an action for indemnification of legal fees and expenses pursuant to the clear and express terms of a contractual loan agreement.

2. Plaintiffs were members of a lending group which lent up to $135 million to Dana over a period of nearly a decade, ending in January 2013. During this period, bolstered by the credit extended by Plaintiffs, including during the severe recession of 2007-2009, Dana's business not only was saved from the brink of bankruptcy, but stabilized and grew. Nevertheless, after waiting nearly three years, Dana did exactly what it did to its prior lenders: it sued them. In October 2015, Dana filed a lawsuit in this Court ("*Dana I*"), alleging breach of contract, breach of fiduciary duty, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and similar claims.

3. Dana filed that lawsuit even though its claims were largely time-barred, despite its express agreement – in the loan agreement, in multiple forbearance agreements, and when it refinanced in January 2013 – to release the Lenders from all liability, and notwithstanding that it had agreed to indemnify the Lenders from and against all losses and liabilities, including their legal fees and expenses.

4. This Court held an initial preliminary conference in *Dana I* on December 11, 2015, shortly before the Lenders' motions to dismiss would have been due. During that conference, the Court expressed skepticism about the viability of the case and invited the defendants to file both motions to dismiss and a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Dana's counsel requested an opportunity to amend their Complaint, and the Court allowed Dana time to do so. Instead of amending their Complaint,

however, on December 15, 2015 – just four days later – Dana voluntarily dismissed it.

5. Despite the voluntary dismissal, Dana's filing and prosecution of *Dana I* required the Lenders to incur significant legal fees and expenses. Those expenditures are clearly subject to the indemnification obligation set forth in the governing loan agreement. As such, Dana should be required to pay the legal fees and expenses incurred by the Lenders in the defense of *Dana I*.

6. Despite due demand by the Lenders, Dana has refused to honor its indemnification obligations.

7. Accordingly, the Lenders now file this lawsuit seeking indemnification for the legal fees and expenses they incurred in connection with *Dana I*.

8. In addition, pursuant to several related documents which he signed personally, Ronald B. Dana personally guaranteed Dana's obligations to the Lenders, including Dana's indemnification obligations. Despite due demand by the Lenders, Ronald B. Dana has refused to honor his obligation to guaranty Dana's indemnification obligations.

9. Accordingly, the Lenders also seek a judgment against Ronald B. Dana personally for payment of the indemnified sums, as he agreed to through his personal guaranty.[1]

---

[1] On April 6, 2016 – nearly four months after Dana dismissed *Dana I* – it filed suit a second time against the Lenders and several others. This second lawsuit, styled *Dana Transport, Inc., et al. v. PNC Bank, National Association, et al.*, Case No. MID-L-2095-16 ("*Dana II*"), was filed in the Superior Court of New Jersey, Law Division, Middlesex County, in violation of the clear forum selection clause in the Third Amended Loan Agreement, Ex. A at § 16.1, which requires Dana to file any lawsuits against the Lenders in New York, New York. The Lenders filed motions to dismiss in *Dana II* on July 12, 2016, and those motions are still pending. Because *Dana II* remains ongoing, the Lenders do not seek, in this action, indemnification of their legal fees and expenses related to their defense of *Dana II*. However, the Lenders reserve the right to seek such relief in the future. Indeed, given Dana's violation of the forum selection clause, the releases which Dana executed in favor of the Lenders, statute of limitations violations, and
Continued on following page

## THE PARTIES

10.     Plaintiff PNC Bank, National Association ("PNC") is a national banking association with its national headquarters located in the Tower at PNC Plaza, 300 Fifth Avenue, Pittsburgh, PA 15222.  PNC was the Agent for the lending group discussed herein.

11.     Plaintiff Wells Fargo Capital Finance, LLC is a Delaware company with its principal place of business at 2450 Colorado Ave., Santa Monica, CA 90404.  Wells Fargo Capital Finance, LLC is the successor in interest to Wells Fargo Foothill, LLC, which was a member of the lending group discussed herein.  Wells Fargo Bank, National Association is the sole member of Wells Fargo Capital Finance LLC.

12.     Plaintiff Wells Fargo Bank, National Association (together with Wells Fargo Capital Finance, LLC, "Wells Fargo") is a national banking association with its main office at 101 N. Phillips Ave., Sioux Falls, SD 57104.  Wells Fargo was a member of the lending group discussed herein and is also the successor in interest to Wachovia Bank, National Association, which was also a member of the lending group discussed herein.

13.     Plaintiff BMO Harris Bank ("BMO") is a national banking association with its national headquarters located at 111 W. Monroe Street, Chicago, IL 60603.  BMO is the successor in interest to M&I Business Credit, LLC, which was a member of the lending group discussed herein.

14.     Plaintiff Huntington National Bank ("Huntington") is a national banking association with its national headquarters located at 41 S. High Street Columbus, OH 43215.  Huntington was a member of the lending group discussed herein.

---

Continued from previous page
numerous other deficiencies, the Lenders anticipate seeking indemnification of their legal fees and expenses related to *Dana II* following the favorable adjudication of that case.

15. Plaintiff Cathay Bank ("Cathay") is a national banking association with its national headquarters located at 9650 Flair Drive, El Monte, CA 91731. Cathay was a member of the lending group discussed herein.

16. Plaintiff Bank Leumi, USA ("Leumi") is a New York State chartered, FDIC insured bank with its national headquarters located at 579 Fifth Avenue, New York, NY 10017. Leumi was a member of the lending group discussed herein.

17. Defendant Dana Transport, Inc. ("Dana Transport") is a New Jersey Logistics Corporation authorized to operate in the State of New York and in fact doing substantial business in the State of New York, with its national headquarters located at 210 Essex Ave., East, Avenel, NJ 07001. Dana Transport and certain of its affiliates were the borrowers under the loan facility discussed herein.

18. Defendant Ronald B. Dana is an adult resident of the State of New Jersey and a citizen of the United States of America, who was the founder and at all times material hereto the President of Dana. Ronald B. Dana signed the operative loan agreement with the Lenders nine times, as President of Dana Transport and as President or Sole Member of each of Dana Transport's relevant affiliates. He also signed several related agreements obligating him personally to guaranty Dana's obligations pursuant to the loan agreement. He also filed suit individually as a plaintiff in *Dana I*. Upon information and belief, Ronald B. Dana exerts, and at all relevant times exerted, complete or near-complete domination and control over Dana.

## JURISDICTION AND VENUE

19. This Court has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are of diverse citizenship and the matter in controversy, exclusive of interest and costs, exceeds $75,000.

20. Venue is proper in this federal judicial district pursuant to 28 U.S.C. §1391(a) and

(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants are subject to personal jurisdiction in this district.

21.     Dana Transport contractually agreed, through a forum selection clause in the governing loan agreement, that this case should be venued in this district, that Dana "accepts for itself" the jurisdiction of this Court, that it "waives any objection to jurisdiction and venue of any action instituted" in this Court, and that it "shall not assert any defense based on lack of jurisdiction or venue or based upon forum non conveniens."

22.     Ronald B. Dana contractually agreed, through forum selection clauses in the governing guarantees, that this case should be venued in this district, that Ronald B. Dana "expressly consents to the jurisdiction" of this Court, and that he "waives any objection to jurisdiction and venue of any action instituted hereon and shall not assert any defense based on lack of jurisdiction or venue or based upon forum non conveniens."

23.     Moreover, Defendants subjected themselves to this Court's jurisdiction by availing themselves of this forum through the filing and prosecution of *Dana I* in this Court.

24.     The Complaint in *Dana I* acknowledged that "the Loan Documents command suit be instituted in the State of New York."

25.     This Court has personal jurisdiction over Defendants in this action for, among other reasons, the reasons set forth in the preceding paragraphs, and because, *inter alia*: (i) Defendants transact, or have transacted during the relevant time period, business in this state; (ii) Defendants solicit, or have solicited during the relevant time period, business in this state; (iii) Defendants derive, or have derived during the relevant time period, substantial revenue from services rendered in this state; and (iv) certain of the Defendants' actions at issue in this case occurred in this district.

**FACTUAL ALLEGATIONS**

I. **The Loan Agreement Requires Dana to Indemnify the Lenders' Legal Fees and Expenses**

26. On or about March 15, 2004 Dana entered into a $20,000,000 line of credit and security agreement, secured by Dana's trade receivables, with PNC Credit, the asset based lending group of PNC.

27. On January 26, 2006, that line of credit was superseded by a syndicated $135,000,000 loan facility. PNC served as the Agent for the lending group under that loan facility.

28. That loan facility was amended, restated, and superseded several times, ultimately by a Third Amended and Restated Revolving Credit, Term Loan and Security Agreement dated as of April 27, 2009 (the "Third Amended Loan Agreement," a true and correct copy of which is annexed hereto as Exhibit A). PNC remained the Agent for the lending group under the Third Amended Loan Agreement, and the other Lenders (or their predecessors in interest) were all members of the group. Defendant Dana Transport and several of its affiliates were the borrowers under the Third Amended Loan Agreement. Defendant Ronald B. Dana was a personal guarantor of Dana's obligations under the Third Amended Loan Agreement.

29. The Third Amended Loan Agreement repeatedly provides that Dana is obligated to indemnify the Lenders from and against all expenses, liabilities, and suits, including without limitation the payment of attorneys' fees and expenses.

30. Section 15.1(b) of the Third Amended Loan Agreement provides, in relevant part:

> To induce Agent and Lenders to [lend money in the manner set forth in the Third Amended Loan Agreement] and in consideration thereof, ***each Borrower hereby indemnifies Agent and each Lender*** and holds Agent and each Lender harmless ***from and against any and all liabilities***, expenses, losses, damages ***and claims of damage*** or injury ***asserted against Agent or any Lender by any Person arising from or incurred by reason of the handling of the financing arrangements of***

***Borrowers*** as provided herein, reliance by Agent or any Lender on any request or instruction from Borrowing Agent or any other action taken by Agent or any Lender with respect to this Section 15.1 except due to willful misconduct or gross (not mere) negligence by the indemnified party (as determined by a court of competent jurisdiction in a final non-appealable judgment).

Ex. A at § 15.1(b) (emphasis added).

31.     Section 16.5 of the Third Amended Loan Agreement provides, in relevant part:

***Each Borrower shall indemnify Agent, each Lender and each of their respective*** officers, directors, Affiliates, employees and ***agents from and against any and all liabilities***, obligations, losses, damages, penalties, actions, judgments, ***suits, costs, expenses*** and disbursements ***of any kind or nature whatsoever (including, without limitation, fees and disbursements of counsel) which may be*** imposed on, ***incurred by***, or asserted against ***Agent or any Lender in any*** claim, ***litigation***, proceeding or investigation ***instituted*** or conducted ***by*** any Governmental Body or instrumentality or ***any other Person with respect to any aspect of, or any transaction contemplated by***, or referred to in, or ***any matter related to, this Agreement*** or the Other Documents, whether or not Agent or any Lender is a party thereto, except to the extent that any of the foregoing arises out of the willful misconduct of the party being indemnified (as determined by a court of competent jurisdiction in a final and non-appealable judgment). . . .

*Id*. at § 16.5 (emphasis added).

32.     Other provisions of the Third Amended Loan Agreement also require Dana to indemnify the Lenders in certain specific circumstances.  *See*, *e.g.*, *id*. at §§ 2.16, 4.13, 4.19(h).

33.     The Third Amended Loan Agreement explicitly provides, in section 16.7, that Dana's indemnification obligations "shall survive termination of this Agreement and the Other Documents and payment in full of the Obligations."

34.     Based on the text of the Third Amended Loan Agreement as a whole, as well as its commercial context, it is unmistakably clear that the parties contemplated that Dana would be required to indemnify the Lenders for their legal fees and expenses incurred in connection with litigation between Dana and the Lenders, except if a court of competent jurisdiction determines, in a final and non-appealable judgment, that a Lender engaged in willful misconduct.

35.     The Third Amended Loan Agreement terminated on or about January 29, 2013, when Dana refinanced its debt with other lenders. On that date, Dana and the Lenders executed a payoff letter (the "Payoff Letter," a true and correct copy of which is annexed hereto as Exhibit B).

36.     The Payoff Letter by which Dana and the Lenders agreed to terminate the Third Amended Loan Agreement likewise provides that Dana's indemnification obligations survived termination: "the Loan Agreement and Other Documents . . . shall be automatically terminated and be of no further force and effect, except for indemnification and expense reimbursement provisions of the Loan Agreement . . . ." Ex. B at 3. The Payoff Letter also separately provides that "each Borrower and each Guarantor hereby agrees to indemnify Agent and each Lender . . . from, and hold each harmless against," "any liabilities, damages, costs or expenses relating to the Loan Agreement, any Other Document or any of the transactions relating to the Loan Agreement or any Other Document." *Id*. at 4.

## II.    Ronald B. Dana Contractually Agrees to Guaranty Dana's Obligations to the Lenders

37.     As an inducement to the Lenders to extend credit to Dana, Ronald B. Dana agreed to personally guaranty its obligations to the Lenders. On June 29, 2007, Ronald B. Dana executed a Second Amended and Restated Limited Guaranty (the "Personal Guaranty," a true and correct copy of which is annexed hereto as Exhibit C). Pursuant to the Personal Guaranty, Ronald B. Dana agreed to "unconditionally guarant[y] to Agent [and] Lenders . . . the prompt payment when due . . . of all present and future obligations and liabilities of any and all kinds of Borrowers to Agent and Lenders." Ex. D at 1. He further agreed that he "***shall pay on demand, all costs, fees and expenses (including expenses for legal services of every kind)*** relating or incidental to the enforcement or protection of the rights of Agent and Lenders hereunder or under

any of the Obligations." *Id*. at § 8 (emphasis added). As defined, the term "Obligations" includes all sums for which Dana might become liable under the Loan Agreement, *see id*. at 1, including Dana's contractual obligation to indemnify the Lenders for their legal fees and expenses. The Personal Guaranty was subject to a $14 million aggregate maximum. *Id*. at § 20.

38. Ronald B. Dana further agreed that the Personal Guaranty "shall be absolute and unconditional, in accordance with its terms, and shall remain in full force and effect without regard to . . . any waiver . . . or modification . . . of the Loan Documents or . . . any other circumstance which might otherwise constitute a defense available to, or a discharge of, the undersigned. . . ." *Id*. at § 2. He also agreed that the Personal Guaranty "is a continuing irrevocable guaranty and shall remain in full force and effect and be binding upon the undersigned . . . until all of the Obligations have been paid in full." *Id*. at § 9; *see also id*. at § 19 (Personal Guaranty not released until the Obligations are paid in full).

39. On April 27, 2009, Ronald B. Dana executed a "Reaffirmation of Guaranty," pursuant to which he reaffirmed that the Personal Guaranty remained in full force and effect, notwithstanding that the then-governing loan agreement was being amended and restated, and affirmed that his obligations under the Personal Guaranty would apply to guaranty Dana's obligations pursuant to the Third Amended Loan Agreement.

40. In addition, on April 27, 2009, Ronald B. Dana also executed a "Limited / Non-Recourse Guaranty" (the "Non-Recourse Guaranty," a true and correct copy of which is annexed hereto as Exhibit D). Ronald B. Dana executed the Non-Recourse Guaranty both in his personal capacity and also on behalf of a number of Dana Transport's affiliates. This guaranty was subject to a $60 million maximum, in contrast to the Personal Guaranty, which was subject to a $14 million maximum. *See* Ex. D at § 20. In most other respects, the terms of the Non-Recourse

Guaranty were substantively identical to the terms of the Personal Guaranty, including the waiver of defenses and the continuation of the guaranty for as long as any of Dana's obligations pursuant to the Third Amended Loan Agreement remain outstanding. *See id*. at 1, §§ 2, 8, 9, 19.

41.   Because Dana's obligation to indemnify the Lenders for their legal fees and expenses is included within the Obligations which are subject to the Personal Guaranty, survives the termination of the Loan Agreement, and remains outstanding at present, Ronald B. Dana's obligation to guaranty the payment of the Lenders' legal fees and expenses remains outstanding as well.

### III.   Dana Files Suit Against the Lenders in the Southern District of New York, and Then Voluntarily Dismisses Its Complaint

42.   On October 8, 2015, Dana Transport, certain of its affiliates, and Ronald B. Dana filed a 435-paragraph, 98-page complaint in the Southern District of New York against the Lenders and several others. That lawsuit, styled *Dana Transport, Inc. et al. v. PNC Bank, National Association, et al.*, Case No. 15 Civ. 7954 (CM) ("*Dana I*"), alleged wrongdoing by the Lenders in connection with their loans to Dana. Dana asserted thirteen causes of action, including breach of contract, breach of fiduciary duty, RICO violations, and other, similar causes of action. Dana sought damages in excess of $500 million.

43.   On November 7, 2015, pursuant to the Court's order, Dana filed a 55-page Civil RICO Case Statement. *See Dana I*, Docket #69.

44.   The deadline for the defendants in *Dana I* to answer or move against the Complaint was December 14, 2015. The parties subsequently agreed on a briefing schedule, which the Court ordered, pursuant to which the defendants' time to move against or otherwise respond to the Complaint was extended to December 23, 2015. *See Dana I*, Docket #92.

45.   On December 11, 2015, the Honorable Colleen McMahon held an initial case

conference in *Dana I*. During that conference, she inquired as to whether the defendants intended to move to dismiss the Complaint, and if so, on what basis. The defendants responded that they intended to move against the Complaint because the RICO claim was insufficiently pleaded and Plaintiffs otherwise lacked federal subject matter jurisdiction; because that claim and all or most of Dana's other claims were time-barred; and because Dana's claims were barred by the releases Dana repeatedly signed. Judge McMahon was receptive to the filing of the defendants' motions to dismiss and further suggested that the defendants consider filing a motion for sanctions. Dana's counsel responded that they would be amending the Complaint, and Judge McMahon allowed Dana time to do so.

46. Instead of amending their Complaint, however, four days later, on December 15, 2015, Dana voluntarily dismissed *Dana I*. See *Dana I*, Docket #93. *Dana I* thus concluded without any judicial determination, let alone a final, non-appealable judgment, that any of the Lenders engaged in willful misconduct or gross negligence.

47. Despite Dana's voluntary dismissal of *Dana I*, the Lenders had already incurred significant legal fees and expenses. The Lenders had to retain counsel, who had to analyze the case, begin learning the factual background, conduct legal research on thirteen causes of action, analyze Dana's 98-page Complaint and 55-page Civil RICO Case Statement, begin drafting their motions to dismiss, and prepare for the initial case conference.

48. The Lenders' legal fees and expenses in connection with *Dana I* were at least $246,704.38 and are subject to indemnification from Dana pursuant to the Third Amended Loan Agreement.

IV. **Dana Refuses to Honor Its Indemnification Obligations and Ronald B. Dana Refuses to Honor His Obligations Under the Guarantees**

49. On September 1, 2016, counsel for PNC, on behalf of the Lenders, sent a demand

letter to Dana Transport and Ronald B. Dana requesting that Dana Transport honor its obligation to indemnify the Lenders in connection with their legal fees and expenses in *Dana I*, and that Ronald B. Dana honor his obligation to personally guaranty the payment to the Lenders of their legal fees and expenses incurred in connection with *Dana I*.  Dana Transport and Ronald B. Dana never responded to this letter.

50. As a result, the Lenders are now required to pursue legal action in order to obtain a recovery against Dana Transport and Ronald B. Dana.

51. The Lenders' legal fees and expenses in connection with this lawsuit are also subject to indemnification from Dana Transport pursuant to the Third Amended Loan Agreement and to Ronald B. Dana's personal guaranty pursuant to both the Personal Guaranty and the Non-Recourse Guaranty.

**FIRST CAUSE OF ACTION**
**(Breach of Contract against Dana Transport)**

52. The Lenders repeat and re-allege the allegations set forth in the preceding paragraphs, inclusive, as if fully set forth herein.

53. The Lenders and Dana Transport were parties to the Third Amended Loan Agreement, which was a valid and enforceable contract.

54. The Lenders performed all their obligations pursuant to the Third Amended Loan Agreement.

55. Pursuant to the terms of the Third Amended Loan Agreement and the Payoff Letter, Dana's indemnification obligations survive the termination of the Third Amended Loan Agreement.

56. The Third Amended Loan Agreement obligates Dana Transport to indemnify the

Lenders for their legal fees and expenses incurred in connection with their defense of *Dana I*.

57. The Third Amended Loan Agreement also obligates Dana Transport to indemnify the Lenders for their legal fees and expenses incurred in connection with this action.

58. Dana Transport has failed to comply with its obligation to indemnify the Lenders for their legal fees and expenses incurred in connection with their defense of *Dana I*.

59. As a direct and proximate consequence of Dana Transport's failure to comply with its indemnification obligations as set forth herein, the Lenders have suffered damages in an amount to be determined at trial, but not less than $246,704.38, plus interest.

## SECOND CAUSE OF ACTION
**(Breach of Contract against Ronald B. Dana)**

60. The Lenders repeat and re-allege the allegations set forth in the preceding paragraphs, inclusive, as if fully set forth herein.

61. Ronald B. Dana was a party to the Personal Guaranty, which was a valid and enforceable guaranty.

62. Ronald B. Dana was a party to the Non-Recourse Guaranty, which was a valid and enforceable guaranty.

63. Pursuant to the terms of the Personal Guaranty and the Non-Recourse Guaranty, Ronald B. Dana was obligated to personally guaranty all of Dana Transport's obligations under the Third Amended Loan Agreement so long as Dana Transport's obligations remain outstanding.

64. The Personal Guaranty and the Non-Recourse Guaranty obligate Ronald B. Dana to guaranty Dana Transport's indemnification of the Lenders for their legal fees and expenses incurred in connection with their defense of *Dana I*.

65.     The Personal Guaranty and the Non-Recourse Guaranty also obligate Ronald B. Dana to guaranty Dana Transport's indemnification of the Lenders for their legal fees and expenses incurred in connection with this action.

66.     Ronald B. Dana has failed to comply with his obligation to guaranty Dana Transport's indemnification of the Lenders for their legal fees and expenses incurred in connection with their defense of *Dana I*.

67.     As a direct and proximate consequence of Ronald B. Dana's failure to comply with his guaranty obligations as set forth herein, the Lenders have suffered damages in an amount to be determined at trial, but not less than $246,704.38, plus interest.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request judgment as follows:

1.      On the First Cause of Action, against Dana Transport for breach of contract, damages in an amount to be determined at trial, but not less than $246,704.38, plus interest;

2.      On the Second Cause of Action, against Ronald B. Dana for breach of contract, damages in amount to be determined at trial, but not less than $246,704.38, plus interest; and

3.      Such other and further relief as this Court deems just and proper.

Dated: New York, New York
October 5, 2016

**REED SMITH LLP**

By: _/s/ Evan K. Farber_

Evan K. Farber
efarber@reedsmith.com

Robert A. Nicholas
rnicholas@reedsmith.com

Anne E. Rollins
arollins@reedsmith.com

599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

*Attorneys for Plaintiffs PNC Bank, National Association, Cathay Bank, and Bank Leumi, USA*


**OTTERBOURG P.C.**

By: _/s/ Pauline McTernan_

Richard G. Haddad
Pauline McTernan
230 Park Avenue
New York, NY 10169
Tel: (212) 661-9100
Fax: (212) 682-6104

*Attorneys for Plaintiffs Wells Fargo Capital Finance, LLC and Wells Fargo Bank, National Association*

NORTON ROSE FULBRIGHT US LLP

By: _____

Steve Dollar
1301 Avenue of the Americas, 30th Floor
New York, NY 10019
Tel: (212) 318-3000
Fax: (212) 318-3400

*Attorneys for Plaintiffs BMO Harris Bank
and Huntington National Bank*