UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, ET AL., <br><br> Plaintiffs, <br><br> -against- <br><br> DANA TRANSPORT, INC. and RONALD B. DANA, <br><br> Defendants. | No: 1:16-CV-07797 (JLR) (JW) <br><br> **OPINION & ORDER** |

JENNIFER L. ROCHON, United States District Judge:

Plaintiffs PNC Bank, National Association; Wells Fargo Capital Finance, LLC; Wells Fargo Bank, National Association; BMO Harris Bank; Huntington National Bank; Cathay Bank; and Bank Leumi, USA (collectively, "Plaintiffs") previously prevailed on a summary judgment motion against Defendants Ronald B. Dana and his company, Dana Transport, Inc. (collectively, "Defendants" or "Dana"), on the claim that Dana is obligated to indemnify Plaintiffs for attorneys' fees incurred in any action initiated by Dana related to a loan agreement between the parties. *See generally* ECF No. 209 ("SJ Op."). Plaintiffs thereafter filed motions to recover the attorneys' fees expended by their respective counsel and costs. *See generally*, ECF Nos. 215, 218, 222. Defendants oppose the award of fees, and in the alternative, urge the Court to reduce the attorneys' fees amounts requested by Plaintiffs. ECF No. 225 ("Opp."). The Court GRANTS the motions for attorneys' fees for the reasons stated below.

## BACKGROUND

The Court assumes familiarity with the parties' relationship and previous history as comprehensively described in the Court's opinion granting partial summary judgment. SJ Op. For ease of reference, the Court will recount the relevant details below.

Plaintiffs and Defendants had a longstanding financial relationship that revolved around a series of credit and security agreements. *Id.* at 2-6. The most recent credit agreement, the Third Amended Loan Agreement (the "TALA"), was entered into on April 27, 2009. *Id.* at 5. The TALA contains the indemnification provision at issue in this case:

> Each Borrower shall indemnify Agent, each Lender and each of their respective officers, directors, Affiliates, employees and agents from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses and disbursements of any kind or nature whatsoever (including, without limitation, fees and disbursements of counsel) which may be imposed on, incurred by, or asserted against Agent or any Lender in any claim, litigation, proceeding or investigation instituted or conducted by any Governmental Body or instrumentality or any other Person with respect to any aspect of, or any transaction contemplated by, or referred to in, or any matter related to, this Agreement or the Other Documents, whether or not Agent or any Lender is a party thereto, except to the extent that any of the foregoing arises out of the willful misconduct of the party being indemnified (as determined by a court of competent jurisdiction in a final and non-appealable judgment).

*Id.* (quoting ECF No. 225-1, Cecchi Decl., Ex. 1 ("TALA") § 16.5). On January 29, 2013, the lending relationship between the parties ended because Dana refinanced its debt with non-party lenders and executed a payoff letter. SJ Op. at 6.

On October 8, 2015, Dana sued Plaintiffs in this district for RICO claims, contract claims, and tort claims arising from the lending relationship between the parties. *Id.* at 6-7. Dana voluntarily dismissed this initial action ("*Dana I*") in December 2015. *Id.* at 7. Plaintiffs, through counsel for PNC, sent a demand letter to Dana requesting indemnification pursuant to the TALA and Ron Dana's personal guaranty. *Id.* at 7. Dana refused to indemnify Plaintiffs. *Id.* Accordingly, Plaintiffs filed the present action seeking indemnification on October 5, 2016. ECF No. 1 ("Compl.").

Prior to the filing of this action, Dana filed a second lawsuit ("*Dana II*") against Plaintiffs and others on April 6, 2016 in New Jersey state court raising contract and tort claims stemming from the lending relationship. SJ Op. at 7. Plaintiffs filed a counterclaim seeking indemnification under the TALA. *Id.* The Court has been informed that *Dana II* is still pending before the New Jersey Superior Court. ECF No. 230.

Turning back to the indemnification action before this Court, the Court denied a motion to dismiss on September 22, 2017, holding that "the TALA required Dana to indemnify Lenders for []attorneys' fees incurred by them in litigation instituted by Dana Transport Incorporated, as was *Dana I*." *Id.* at 7. The Court also considered, and denied, a motion for judgment on the pleadings from Plaintiffs. ECF No. 107.

On August 26, 2022, the Court granted partial summary judgment in favor of Plaintiffs. SJ Op. at 27. The Court concluded that there were no issues of fact as to whether the TALA contains an indemnification provision, that Plaintiffs performed under the TALA, and that Dana failed to indemnify Plaintiffs for attorneys' fees incurred with respect to *Dana I*. *Id.* at 9. The Court next considered whether the TALA was unenforceable because Dana signed the agreement under duress and/or that Dana had no duty to indemnify because Plaintiffs committed "willful misconduct," as set forth in a carve out provision of the indemnification clause. *Id.* at 9. The Court rejected both of these arguments and ruled in favor of Plaintiffs on their partial summary judgment motion. *Id.* at 9-25.

The Court directed the parties to file a joint letter proposing next steps in the action. *Id.* at 27. In that letter, Plaintiffs proposed that the Court would decide the attorneys' fees and costs to be awarded given the jury waiver in the loan agreement, and proposed a briefing schedule for their fee application. *See* ECF No. 210. Defendants took issue with Plaintiffs' suggestion that they may seek fees for the present indemnification action instituted by

Plaintiffs, and stated that if Plaintiffs sought fees incurred only with respect to *Dana I*, the 2015 action, they would agree to the briefing schedule proposed by Plaintiffs. *Id.* at 2-4. Plaintiffs agreed that they would only seek fees and costs associated with *Dana I* and the mutually-agreed -upon briefing schedule was thereafter ordered by the Court. ECF Nos. 211, 212. The case was reassigned to the undersigned on September 26, 2022. ECF No. 213. The parties confirmed in a joint letter to the Court dated October 10, 2022 that "no trial on Plaintiffs' fee applications is necessary for the fee applications" in this case. ECF No. 221.

Pursuant to the next steps agreed upon by the parties, Plaintiffs BMO Harris Bank and Huntington National Bank (collectively, "BMO and HNB") filed a motion for attorneys' fees on October 7, 2022. ECF No. 215 ("BMO and HNB Mot."). That motion was supported by a declaration with exhibits, ECF No. 216 ("Dollar Decl."), and a memorandum of law in support, ECF No. 217 ("BMO and HNB Br."). On the same day, Wells Fargo Bank, National Association and Wells Fargo Capital Finance LLC (collectively, "Wells Fargo") filed their motion for attorneys' fees, ECF No. 218 ("Wells Fargo Mot."), with a declaration and exhibits, ECF No. 219 ("Haddad Decl."), and a memorandum of law in support of their motion, ECF No. 220 ("Wells Fargo Br."). The remaining Plaintiffs, Cathay Bank, Bank Leumi, USA, and PNC Bank, National Association (collectively "PNC") filed a motion for attorneys' fees on October 24, 2022. ECF No. 222 ("PNC Mot.").[1] PNC also submitted a memorandum of law in support, ECF No. 223 ("PNC Br.") and a declaration, ECF No. 224 ("Nicholas Decl."). Defendants filed an omnibus brief in opposition on November 4, 2022, ECF No. 225 ("Opp. Br."), with a supporting declaration and exhibits (ECF No. 225-1)

---

[1] The PNC motion was initially filed on October 7, 2022 with the other motions (ECF No. 214) but rejected by the Clerk of Court due to a filing error. It was thereafter refiled on October 24, 2022.

("Cecchi Decl."). Each group of Plaintiffs filed a reply brief on November 18, 2022. ECF No. 226 ("PNC Reply"); ECF No. 227 ("Wells Fargo Reply"); ECF No. 228 ("BMO and HNB Reply").

## DISCUSSION

Plaintiffs seek the following amounts as reasonable attorneys' fees and expenses for which they are entitled to be indemnified by Defendants.

| BMO Application[2] | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total |
| Stephen Mark Dollar | $770.00 | 4.1 | $3,157.00 |
| Mark Thomas Oakes | $720.00 | 7.0 | $5,040.00 |
| William Patrick Courtney | $380.00 | 10.0 | $3,800.00 |
| Additional | | | |
| Expenses | | | $350.25 |
| Client Discount | | | -$1,623.30 |
| Total | | 21.1 | $10,723.95 |

| HNB Application[3] | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total |
| Stephen Mark Dollar | $770.00 | 3.3 | $2,541.00 |
| Mark Thomas Oakes | $720.00 | 8.1 | $5,832.00 |
| William Patrick Courtney | $380.00 | 1.8 | $684.00 |
| Additional | | | |
| Expenses | | | $381.34 |
| Client Discount | | | -$1,620.72 |
| Total | | 13.2 | $7,817.62 |

| Wells Fargo Application[4] | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total |
| Richard G. Haddad | $750.00 | 13.0 | $9,750.00 |
| Andrew Kramer | $750.00 | 19.8 | $14,850.00 |
| Pauline McTernan | $520.00 | 5.6 | $2,912.00 |
| Meaghan Millan | $250.00 | 0.5 | $125.00 |
| Total | | 38.9 | $27,637.00 |

---

[2] *See* BMO and HNB Br. at 6; Dollar Decl. ¶ 14; ECF No. 216-3.
[3] See BMO and HNB Br. at 6. Dollar Decl. ¶ 15; ECF No. 216-4.
[4] *See generally* Haddad Decl. and attached exhibits.

| PNC Application[5] | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total |
| Robert A. Nicholas | $400.00 | 155.2 | $62,080.00 |
| Evan K. Farber | $400.00 | 118.6 | $47,440.00 |
| Anne E. Rollins | $275.00 | 145.2 | $39,930.00 |
| Joshua M. Peles | $275.00 | 65.6 | $18,040.00 |
| Rebecca D. Maller | $275.00 | 39.5 | $10,862.50 |
| Marguerita T. Young-Jones | $120.00 | 0.3 | $36.00 |
| Additional Expenses | | | $1,568.52 |
| Total | | 524.4 | $179,957.02 |

Defendants oppose this application on two grounds. First, they argue that Plaintiffs are not entitled to any award of attorneys' fees at this juncture under the terms of the TALA. Opp. Br. at 2-4. Second, they assert that the requested fees should be rejected as unreasonable because the billing records contain redactions and block billing. *Id.* at 4-8. The Court will address each objection in turn.

I.  **ENTITLEMENT TO FEES**

Defendants first argue that the Plaintiffs are not entitled to attorneys' fees pursuant to the TALA at this time. Section 16.5 of the TALA states, in relevant part, as follows:

> Each Borrower shall indemnify Agent, each Lender . . . from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses and disbursements of any kind or nature whatsoever (including, without limitation, fees and disbursements of counsel) which may be imposed on, incurred by, or asserted against Agent or any Lender in any claim, litigation, proceeding or investigation instituted or conducted by any Governmental Body or instrumentality or any other Person with respect to any aspect of, or any transaction contemplated by, or referred to in, or any matter related to, this Agreement …, except to the extent that any of the foregoing arises out of the willful misconduct of the party being indemnified (<u>as determined by a court of competent jurisdiction in a final and non-appealable judgment</u>).

---

[5] *See* Nicholas Decl. ¶ 23 and attached exhibits at ECF No. 224.

TALA at 95 (emphasis added).  Defendants argue that because a necessary condition of the indemnification provision has not been met – a "court of competent jurisdiction" has not rendered "a final and non-appealable judgment" regarding whether there has been willful misconduct – attorneys' fees cannot be granted.  Opp. Br. at 2-3.  Defendants contend that the April 26, 2022 summary judgment decision providing that Plaintiffs are entitled to indemnification from Defendants "will be, but has not yet been, appealed" and therefore the contractual trigger for indemnification set forth in Section 16.5 of the TALA has not been met. *Id.* at 3.  In addition, Defendants argue that *Dana II*, which alleges willful misconduct including fraudulent concealment with respect to the TALA, is still pending in New Jersey Superior Court and until appeals are exhausted in that case, it is premature to grant the application for fees and costs here.  *Id.* at 3-4.

In response, Plaintiffs point out that the Court has already granted summary judgment on whether Defendants were liable for Plaintiffs' attorneys' fees, and found that there was no willful misconduct.  *See* BMO and HNB Reply at 1-2; PNC Reply at 2-3.  Plaintiffs contend that Defendants have waived their new argument that an award of fees is premature.  *See* BMO and HNB Reply at 1, 4; PNC Reply at 3.  Finally, Plaintiffs maintain that Defendants are misinterpreting the language of the TALA's indemnification provision.  *See* BMO and HNB Reply at 1-2; PNC Reply at 4.  The Court agrees with Plaintiffs that the present application is appropriate.

Section 16.5 of the TALA provides for indemnification "except" if the actions arise out of "the willful misconduct of the party being indemnified (as determined by a court of competent jurisdiction in a final and non-appealable judgment)."  TALA § 16.5.  This Court has already rejected a finding of willful misconduct here and ordered that Plaintiffs are

entitled to indemnification from Defendants. *See* SJ Op. That is law of the case. *See Perreca v. Gluck*, 262 F. Supp. 2d 269, 272 (S.D.N.Y. 2003) (internal citation and quotation marks omitted) ("[A] decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent states of the same litigation[.]"). Therefore, the provision of the Section 16.5 of the TALA that carves out indemnification for willful misconduct is inapplicable. It also necessarily follows that there has been no final and non-appealable judgment that there was willful misconduct. TALA § 16.5. Thus, this exception does not apply, and it is appropriate for the Court to determine the amount of attorneys' fees and costs due.

Defendants' argument that the present summary judgment decision must proceed through all appeals before attorneys' fees can be determined does not make sense. Defendants have not sought to appeal the Court's summary judgment decision on indemnification liability since it was issued over a year ago. They are presumably waiting to appeal until a final award of attorneys' fees are entered. *See Honeywell Int'l, Inc. v. Purolator Prods. Co.*, 468 F.3d 162, 164 (2d Cir. 2006) (award of attorneys' fees is "not an appealable final order until the amount of fees and costs has been set by the district court"). Given the Court's prior order that Plaintiffs are entitled to indemnification, determining the amount of those attorneys' fees and costs is now appropriate.

Indeed, such a determination is the very next step agreed upon by the parties. The Court expressly asked the parties after granting summary judgment for a joint proposal regarding next steps in this case. SJ Op. at 27. The parties jointly proposed briefing on the application for attorneys' fees for *Dana I*. ECF No. 212. The only dispute that was previewed to the Court was that Defendants disagreed that Plaintiffs could seek fees for this indemnification action brought by Plaintiffs, in addition to the attorneys' fees related to *Dana*

8

*I*. ECF No. 210. Plaintiffs ultimately agreed to only seek attorneys' fees related to *Dana I*, and therefore Defendants agreed to the briefing schedule that included Plaintiff's fee application with supporting documents to be filed on October 7, 2022. ECF No. 211. At no time did Defendants suggest that such a motion needed to wait until a not-yet-filed appeal was concluded.

The Court is not persuaded by Defendants' reliance on *Zyburo v. Continental Cas. Co.*, 60 F. Supp. 3d 531 (S.D.N.Y. 2014). In *Zyburo*, the court found that New York Insurance Law Section 3420 did not permit a non-party to an insurance contract to seek a declaratory judgment against the insurer to establish coverage for the insured until it had a judgment against the insured that was outstanding for thirty days. *Id.* at 534-35. That the plaintiff in *Zyburo* did not have standing yet to sue the insured under New York insurance law does not speak at all to whether the attorneys' fee application that follows the grant of summary judgment on indemnification under the TALA is appropriate here.

The Court further rejects Defendant's argument that this Court cannot grant Plaintiffs' application for fees and costs until there is a final judgment from the New Jersey Appellate Division or Supreme Court in *Dana II*. Opp. Br. at 4. This Court has already rejected Defendants' claim that there was any willful misconduct that excuses Defendants from indemnifying Plaintiffs for *Dana I*. SJ Op. at 14-25. In opposing summary judgment before this Court, Defendants previously argued that the New Jersey Court was "a court of competent jurisdiction" that should decide whether the lenders acted with willful misconduct, as opposed to this Court. ECF No. 181 at 32-33. Noting its earlier holding that it would not stay or defer ruling on this matter because another action was pending in *Dana II*, SJ Op. at 7-8, this Court, undeniably a court of competent jurisdiction, then went on to rule that there was no willful misconduct excusing indemnification, *id.* at 14-25. That a court in New Jersey in *Dana II* is

9

adjudicating claims, some of which sound in fraud, ECF No. 230-1, and the judgment of which eventually may be appealed, does not nullify the fact that in this case, the Court has expressly rejected a claim of willful misconduct and ordered that indemnification is appropriate for the 2015 action. *See generally* SJ Op.

For all of these reasons, the Court rejects Defendants' argument that the present fee application is premature and moves on to determine the reasonableness of the fees requested.

## II.      REASONABLE ATTORNEYS' FEES

In evaluating the present motion, the Court must assess the reasonableness of the attorneys' fees and costs requested by each Plaintiff. In summary, BMO and HNB seek a total of $18,541.57. *See* BMO and HNB Br. at 6. Wells Fargo seeks $27,637.00. *See* Wells Fargo Br. at 9. Finally, PNC seeks $179,637.02. *See* PNC Br. at 2.

To determine appropriate attorneys' fees, the Court calculates a "'presumptively reasonable fee' by determining the appropriate billable hours expended and 'setting a reasonable hourly rate, taking account of all case-specific variables.'" *Lilly v. City of New York*, 934 F.3d 222, 229-30 (2d Cir. 2019) (quoting *Arbor Hill Concerned Citizens of Elections*, 522 F.3d 182, 189-90 (2d Cir. 2008)). "[T]he fee applicant . . . bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).

To determine a reasonable hourly rate, courts look to the "prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). To determine what a reasonable client would pay, courts consider the "*Johnson* factors":

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 493 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). The Court will also consider that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190.

Turning to reasonable hours billed, a claimant is only to be compensated for "'hours reasonably expended on the litigation,' and not for hours 'that are excessive, redundant, or otherwise unnecessary.'" *Thor 725 8th Ave. LLC*, No. 14-cv-04968 (PAE), 2015 WL 8784211, at *9 (S.D.N.Y. Dec. 15, 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). Requests must be documented by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* (quoting *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). If the court identifies excessive billing, it "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (internal citation and quotation marks omitted). In sum, "the determination of fess 'should not result in a second major litigation.'" *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017) (quoting *Fox v. Vice*, 563 U.S. 826, 828 (2011)).

### A. Hourly Rates

Defendants do not object to the hourly rates each party requested for their counsel. However, the Court will evaluate the reasonableness nonetheless. To calculate a reasonable fee, courts must rely on the "prevailing [hourly rate] in the community." *Arbor Hill*, 522 F.3d at 190 (internal citation and quotation marks omitted). The community is "the district where the district court sits." *Id.* Plus, "the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.*

The community in this case is the Southern District of New York. Each party has also represented that their requested rates stem from what their clients agreed to pay. *See* BMO and HNB Br. at 7; Wells Fargo Br. at 8-9; PNC Br. at 4. The Court also takes into account that *Dana I* "raised complex issues including RICO, contract and tort claims arising from the years-long lending relationship between the parties . . . ." Wells Fargo Br. at 9. The Court also notes that for commercial matters, the rate for partners is often between $500 and $850 per hour, and the rate for associates between $300 and $500 per hour. *See Genger v. Genger*, No. 14-cv-5683 (KBF), 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015) (determining that courts have awarded experienced law firm partners between $500 and $800 per hour and associates $300 and $500 per hour); *U.S. ex rel. Nichols v. Comput. Scis. Corp.*, 499 F. Supp. 3d 32, 41 (S.D.N.Y. 2020) (awarding $850 for partners after noting that "the average partner billing rate" in the Southern District of New York was $942 in 2015 and between $425 and $500 for associates). With the *Johnson* factors in mind,[6] the Court finds that the requested rates for all counsel here are reasonable.

---

[6] While the Court does not specifically address each *Johnson* factor in this opinion, it has considered these factors in determining the appropriate hourly rate for counsel. *See C.D. v.*

Plaintiffs BMO and HNB seek a rate of $770 for Stephen Mark Dollar, $720 for Mark Thomas Oakes, and $380 for William Patrick Courtney.  ECF No. 216-3 at 3; ECF No. 216-4 at 3.  BMO and HNB assert that the rates for their counsel are reasonable because they represent the rate a client would be willing to pay.  BMO and HNB Br. at 7.  BMO and HNB have also demonstrated that these rates are consistent with those the firm charges to clients for matters in this district for "the same or similar services by attorneys with comparable experience, reputation, and ability."  *Id.* at 8.  These rates are also consistent with rates in this district for work done on commercial matters by large law firms as stated above.

Wells Fargo seeks fees of $750 for partners, $520 for a senior associate with 7 years of experience; and $250 an hour for a junior associate.  Wells Fargo Br. at 7. With no objection from Defendants, the Court finds these hourly rates reasonable and within the range normally awarded in this district.  *See* supra at 12.

PNC Bank, Cathay Bank, and Bank Leumi request an hourly rate for their attorneys of $400 for partners and $275 for associates.  PNC Br. at 4.  These rates are within the range, or below, those normally charged within this district and are reasonable.  *See* supra at 12.

**B.  Reasonable Hours**

Defendants raise two issues with the amount of time billed: (1) Plaintiffs' counsel has redacted their billing records so that the records are "so vague and ambiguous that neither Defendants nor this Court can determine whether they are reasonable," Opp. Br. at 4-7; and (2) Plaintiffs' counsel has improperly "bulk billed" their time entries in several instances, *id.*

---

*Minisink Valley Cent. Sch. Dist.*, No. 17-cv-07632 (PAE), 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9, 2018) ("A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." (citation omitted)).

at 7-8. Other than objecting to the foregoing, Defendants do not otherwise take issue with the reasonableness of the time that was expended by Plaintiffs in particular entries.

   1. *Redactions*

The Court will consider the redactions first. Courts have found that time entries that are too vague "prevent the Court from determining whether the time expended was reasonable." *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009).

Defendants BMO and HNB redacted only irrelevant information such as an internal matter number, client accounting information and financial account numbers, and time entries for which BMO and HNB are not seeking fees. *See* ECF No. 216-3; ECF No. 216-4; BMO and HNB Reply at 3. These redactions are minimal and do not prevent this Court from evaluating the reasonableness of the time billed.

The billing records for counsel for Wells Fargo include limited redactions. Of the 71 entries, the only redactions remove the names of 6 former and current employees of Wells Fargo with whom counsel spoke, for privacy reasons. Wells Fargo Reply at 6-7; Haddad Decl. ¶ 1; ECF No. 219-1. These redactions do not prevent the Court from assessing the reasonableness of the time expended, and the Court rejects Defendants' objection to these records.

The records submitted by PNC contain more redactions. Some of the redactions do not pertain to relevant information for purposes of assessing reasonable fees such as time and fees that are not being sought in this action, ECF No. 224-2 at 3, ECF No. 224-3 at 3, and wiring and instructions and client file number, ECF No. 224-2 at 4. But Counsel for PNC also redacted some privileged descriptions of their work, including certain topics they researched. *See* ECF Nos. 224-2, 224-3. The Court has closely reviewed these records and, despite the

redactions, sufficient text remained in many of the entries from which to evaluate the reasonableness of the billing records. For example, one entry for 1.3 hours from 10/15/15 states: "Strategy and planning meeting with Bob Nicholas and Evan Farber. Reviewed Evan's analysis [redacted.]" It is not necessary to scrutinize the particular legal issue contained in the analysis; the Court can determine that 1.3 hours of time for a strategy and planning meeting between the lawyers, where one of the lawyer's legal analysis was reviewed, at the time the lawyers were considering a potential motion to dismiss (ECF No. 224-2 at 4, 10/15/15 Rollins entry), is reasonable. *See also* ECF No. 224-4 at 6 (Rollins' entries redacting topics contained in the motion to dismiss still provide sufficient information to conclude that the 1.20 and 3.80 hours spent on reviewing information for the motion to dismiss is reasonable). Similarly, the 5.9 hours of research conducted on 11/13/15 by Peles, with the block billing broken down to show that various topics were researched (ECF No. 224-3 at 7-8), is reasonable. As noted in the 11/12/15 entry of Rollins, the lawyers were researching the complicated area of RICO at this time. *Id.* at 6. Finally, it is not unreasonable for Rollins to bill 5.3 and 10.10 hours for drafting a motion to dismiss in this complicated case on 11/21/15 and 11/22/15 respectively, even if the particular legal topics in the proposed motion to dismiss are redacted from the time entries. *See* ECF No. 224-3 at 15; *see, e.g.*, *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 2020 WL 5731953, at *3 (S.D.N.Y. Sept. 24, 2020) (refusing reduction for redacted records because the "[c]ourt can still determine the nature of the work performed" based on the context). Indeed, "[c]ourts in this circuit have awarded attorneys' fees despite the redaction of privileged information in attorneys' time records." *CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*, No. 07-cv-11078 (LTS), 2011 WL 4526132, at *4 (S.D.N.Y. Sept. 29, 2011).

In an abundance of caution, and because some of the entries provided more limited information as redacted, the Court requested and reviewed the unredacted portions of the billing records to review *in camera*. ECF No. 231. This review confirms that the topics for the research and discussions were relevant to this dispute, and that most of the time expended was reasonable. *See Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*, No. 01-cv-00877 (JSR), 2010 WL 3290965, at *3 (S.D.N.Y. Aug. 11, 2010) (reviewing billing records *in camera* to assess tasks conducted and reasonableness of fess requested); *Major League Baseball Props., Inc. v. Corporacion de Television y Microonda Rafa, S.A.*, No. 19-cv-08669 (MKV), 2020 WL 5518361, at *4 (S.D.N.Y. Sept. 14, 2020) (rejecting objection to in camera review of billing records in order to assess reasonable attorneys' fees because "courts often review invoices and billing records *in camera* when calculating awards of attorneys' fees and costs") (collecting cases).[7]

In its review, the Court did determine that there were two entries that were unreasonable and should be subtracted from the fee award: 10/27/15 Farber entry for 0.3 hours for $400 (ECF No. 224-2 at 11); 10/30/15 Rollins entry for 0.9 hours for $275 (ECF No. 224-2 at 16). Therefore, recoverable fees will be reduced by $675.

2. Block Billing

Defendants' second objection is to some of PNC's counsel's entries where Defendants assert that block billing obfuscates the amount of time spent on particular tasks and introduces

---

[7] The Court will permit the billing records to remain redacted, as filed. While they are judicial documents and important to the subject matter of this dispute to recover fees, they contain privileged information that reflects litigation strategy and the particular areas of research conducted by counsel. *See Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-cv-8987-GHW, 2021 WL 4481853, at *1-2 (S.D.N.Y. Sept. 29, 2021) (reviewing *in camera* charts detailing legal work performed by counsel and permitting filing of redacted billing records given privileged nature of redacted narratives).

vagary. Opp. Br. at 7. "Block billing . . . – the practice of lumping multiple distinct tasks into a single billing entry – is generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022). Despite this admonition, block billing is not impermissible when "the district court is still able to conduct a meaningful review of the hours for which counsel seeks reimbursement." *Id.* (internal citation and quotation marks omitted). Courts generally allow block billing when the blocked amount of time is short and the billing entry contains "enough detail and specificity so as to afford reasonable confidence that the time billed was productively spent, even if it is impossible to reconstruct the precise amounts of time allocable to each specific task listed in the block entry." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 54 (S.D.N.Y. 2015).

While some of PNC's counsel's records reflect a degree of block billing, the Court finds the records sufficiently detailed to allow counsel and the Court to determine whether the time billed was reasonable. *See* ECF No. 224-3. Most of the blocked billing entries bill times within 1 to 2 hours. *Cf. Beastie Boys*, 112 F. Supp. 3d at 53 (finding block billing most problematic when "large amounts of time (e.g., five hours or more) are block billed"). Entries reflecting five hours and longer generally are broken down into the time spent on each task, averting the lack of specificity that is created by block billing. *See* ECF No. 224-3 at 6 (11/4/2015 Peles Entry; 11/13/2015 Peles Entry). However, some entries are long, over 5 hours and sometimes over 7 hours, and do not break down the time spent on tasks. *See id.* at 12, 16 (11/18/2015 Farber Entry; 11/18/2015 Rollins Entry; 11/23/2015 Rollins Entry). Accordingly, the Court will apply a 5% reduction to the hours sought by PNC's counsel to account for the vague entries that obfuscate how much time was actually spent on certain tasks.

Defendants raise no other objections to Plaintiffs' billing records or expenses. The Court has closely reviewed the billing records and finds the hours spent to be reasonable, subject to the reductions above.

### C. Calculation of Reasonable Attorneys' Fees and Costs

Based on the foregoing, the Court finds the following attorneys' fees and costs to be reasonable and appropriate here:

| BMO Award[8] | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total |
| Stephen Mark Dollar | $770.00 | 4.10 | $3,157.00 |
| Mark Thomas Oakes | $720.00 | 7.00 | $5,040.00 |
| William Patrick Courtney | $380.00 | 10.00 | $3,800.00 |
| Additional | | | |
| Expenses | | | $350.25 |
| Client Discount | | | -$1,623.30 |
| Total | | 21.1 | $10,723.95 |

| HNB Award[9] | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total |
| Stephen Mark Dollar | $770.00 | 3.30 | $2,541.00 |
| Mark Thomas Oakes | $720.00 | 8.10 | $5,832.00 |
| William Patrick Courtney | $380.00 | 1.8 | $684.00 |
| Additional | | | |
| Expenses | | | $381.34 |
| Client Discount | | | -$1,620.72 |
| Total | | 13.2 | $7,817.62 |

| Wells Fargo[10] | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total |
| Richard G. Haddad | $750.00 | 13 | $9,750 |
| Andrew Kramer | $750.00 | 19.8 | $14,850 |
| Pauline McTernan | $520.00 | 5.6 | $2,912 |
| Meaghan Millan | $250.00 | .5 | $125 |
| Total | | 38.9 | $27,637.00 |

---

[8] *See* Dollar Decl. ¶ 14; ECF No. 216-3.
[9] *See* Dollar Decl. ¶ 15; ECF No. 216-4.
[10] *See generally* Haddad Decl. and attached exhibits.

| PNC Adjusted Award[11] | | | |
|---|---|---|---|
| **Timekeeper** | **Requested Rate** | **Hours Billed** | **Total** |
| Robert A. Nicholas | $400 | 147.44 | $58,976.00 |
| Evan K. Farber | $400 | 112.67 | $45,068.00 |
| Anne E. Rollins | $275.00 | 137.94 | $37,933.50 |
| Joshua M. Peles | $275.00 | 62.32 | $17,138.00 |
| Rebecca D. Maller | $275.00 | 37.525 | $10,319.38 |
| Marguerita T. Young-Jones | $120.00 | 0.285 | $34.20 |
| **Additional** | | | |
| Expenses | | | $1,568.52 |
| Court deduction | | | -$675.00 |
| **Total** | | 524.4 | $170,362.60 |

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Plaintiffs' motions for attorneys' fees at ECF Nos. 215, 218, and 220.  BMO and HNB are awarded $18,541.57 in attorneys' fees and expenses.  Wells Fargo is awarded $27,637.00 in attorneys' fees and expenses.  PNC is awarded $170,362.60 in attorneys' fees and expenses.  The Clerk of the Court is respectfully requested to CLOSE this case.

Dated: September 5, 2023
       New York, New York

                                                    SO ORDERED.

                                                    *Jennifer Rochon*
                                                    JENNIFER L. ROCHON
                                                    United States District Judge

---

[11] *See* Nicholas Decl. ¶ 23 and attached exhibits.  A 5% reduction has been applied to the hours billed.